# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pleasant Hill Cemetery Ass'n v. Morefield*, 2013 IL App (4th) 120645

---

| | |
|---|---|
| Appellate Court Caption | PLEASANT HILL CEMETERY ASSOCIATION and KEITH SMITH, Plaintiffs-Appellants, v. TIMOTHY MOREFIELD, Road Commissioner of the Arrowsmith Township Road District, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-12-0645 |
| Filed | April 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's action seeking damages arising from defendant road commissioner's alteration of the surface flow of water onto plaintiff's farmland was barred by the Tort Immunity Act, regardless of plaintiff's contention that the complaint was not an action in tort, since, even assuming that the Act applies only to actions in tort, unreasonably altering the flow of surface water amounts to the tort of nuisance. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 11-MR-245; the Hon. Paul G. Lawrence, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Mercer Turner (argued), of Law Office of Mercer Turner, P.C., of Bloomington, for appellants. |
| | |
| | Robert J. Lenz (argued), of Bloomington, for appellee. |
| | |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. |
| | Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion. |

# OPINION

¶ 1    The plaintiffs in this case are Pleasant Hill Cemetery Association (Association) and Keith Smith. The Association owns some farmland, which Smith, as a tenant farmer, rents from the Association. The defendant is Timothy Morefield, the highway commissioner of Arrowsmith Township. Plaintiffs brought this case against Morefield for allegedly altering the surface flow of water, and thereby damaging the farmland, by some work he did on 3200 East Road in Arrowsmith Township.

¶ 2    Invoking the immunity in section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2010)), defendant moved to dismiss the amended complaint as "barred by *** affirmative matter avoiding the legal effect of or defeating the claim"–the "affirmative matter" being, of course, the immunity (735 ILCS 5/2-619(a)(9) (West 2010)). The trial court granted defendant's motion, dismissing the amended complaint with prejudice. Plaintiffs appeal.

¶ 3    In their appellate briefs, plaintiffs offer no convincing rationale for holding the immunity in section 2-201 (745 ILCS 5/2-201 (West 2010)) to be inapplicable to the work that defendant did, as road commissioner, on 3200 East Road. Therefore, we affirm the trial court's judgment.

¶ 4                          I. BACKGROUND

¶ 5    The amended complaint has two counts, both of which allege that defendant violated the "Drainage Law" by making "unreasonable and material changes to the natural drainage patterns" on land that the Association owned and which Smith, as a tenant farmer, had been renting from the Association. Count I is the Association's action against defendant. Count II is Smith's action against defendant.

¶ 6    Both counts allege as follows. "In multiple phases during 2008 through 2010, the Defendant constructed a new farm drainage system, all related to and along 3200 East Road, which materially affects the farm real estate of the [Association], which is contiguous to 3200 East Road" and "immediately downstream from the changes."

¶ 7 Before defendant began the construction and also during the construction, the Association "informed the Defendant of the likely results of its alteration of water diversion, difficulty of cultivation to some parts of the [Association's] land as a result of water diversion, and the adverse effects of the concentration of water flow on other parts of [the land]." Both counts assert: "When making the changes [in the drainage system], the Defendant was willful and wanton because he knew changes would violate the common law and statutory obligation to maintain natural drainage patterns, and result in the alteration of natural drainage patterns ***."

¶ 8 In count I, the Association specifically describes the property damages it allegedly has incurred as a result of defendant's alteration of the natural drainage patterns. For this property damage, the Association seeks compensation in an amount in excess of $50,000. Count I alleges:

"9. The changes created by the Defendant in the natural drainage pattern created the following adverse conditions for the [Association's] farm real estate, which have damaged the Plaintiff:

(a) a reduction in tillable acres,

(b) a reduction in the productivity due to the need to delay planting,

(c) increased erosion,

(d) a need to replace existing drainage tile which will become uncovered as a result of erosion, and

(e) a need to install additional drainage tile to remove the additional volume of water flowing onto the premises, which does not drain away since the additional inflow was not placed into an existing drainage pattern[ ],

which collectively has reduced the value of the [Association's] farm real estate by an amount in excess of $50,000.00, which damage the [Association] is seeking herein.

10. Plaintiff's use and enjoyment of his affected land has been unreasonably and substantially invaded, creating a confiscatory effect.

11. The changes described *** above proximately caused the damage Plaintiff has suffered."

¶ 9 Likewise, in count II, Smith alleges:

"9. The changes created by the Defendant in the natural drainage pattern caused the following adverse conditions for the [Association's] farm real estate, which have damaged [Smith] by reducing his income:

(a) a reduction in tillable acres,

(b) a reduction in the productivity due to the need to delay planting,

(c) increased erosion, and

(d) a need to install additional drainage tile to remove the additional volume of water onto the premises, which does not drain away since the additional inflow was not placed into an existing drainage pattern.

10. [Smith's] use and enjoyment of his affected land has been unreasonably and

-3-

substantially invaded, creating a confiscatory effect.

11. The changes described *** above proximately caused the damage Plaintiff has suffered, which amount [*sic*] to a reduction in farm income in excess of $50,000.00[ ].”

¶ 10 The prayer in both counts is for a “Judgment against Defendant in an amount in excess of $50,000.”

¶ 11 Pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)), defendant moved to dismiss the amended complaint on the ground that “the claim asserted against defendant [was] barred by *** affirmative matter.” The affirmative matter was defendant’s claimed immunity under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2010)), which provided that “a public employee serving in a position involving the determination of policy or the exercise of discretion [was] not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.” Defendant alleged that all the improvements he had made to 3200 East Road “were the result of [his] policy decisions balancing competing interests within [his] jurisdiction.” Also, he alleged that the improvements “were the result of discretionary acts unique to the office of Township Highway Commissioner.”

¶ 12 Defendant acknowledged that section 3-108 of the Tort Immunity Act (745 ILCS 10/3-108 (West 2010)) carved out an exception to immunity if the public employee was “guilty of willful and wanton conduct in its supervision proximately causing such injury.” Nevertheless, he contended that he could not reasonably be found “guilty of willful and wanton acts in performing improvements to 3200 East Road, Arrowsmith Township for the safety and well-being of the public merely because Plaintiffs object[ed] to said improvements on the basis of their private property interests.”

¶ 13 Along with his motion for dismissal, defendant filed his affidavit, in which he averred as follows:

“1. Affiant is an adult resident of the State of Illinois, is under no legal disability, and makes this Affidavit of his own personal knowledge.

2. I am the duly elected Highway Commissioner of Arrowsmith Township, County of McLean, State of Illinois.

3. During the Spring of 2010 I made a policy decision in my official capacity as Township Road Commissioner by making a judgment call that it best served all of the interests in my township that I honor Plaintiffs’ request to clean out and deepen the township road drainage ditch on the west side of 3200 East Road.

4. At my direction, and in my discretion as Township Highway Commissioner, the drainage ditch in the township road right-of-way on the west side of 3200 East Road was clean [*sic*] out and deepen [*sic*] during the Spring of 2010.

5. During 2010 I made a policy decision in my official capacity as Township Road Commissioner by making a judgment call that it best served all of the interests in my township that the natural flow of water from east to west be dispersed underneath 3200 East Road rather than flowing over the roadway.

6. In my official capacity as Township Highway Commissioner I judged that it was

-4-

necessary as a matter of public safety that the natural flow of water from east to west be directed underneath 3200 East Road rather than flowing over the top of the roadway where it was washing out the shoulders and thereby creating a hazardous condition.

7. In support of my policy decision to direct the water, as it continued its natural flow to the west, under 3200 East Road rather than on top of it, I directed that improvements be made to 3200 East Road during June of 2010 removing one old culvert and installing three new culverts in the same location.

8. In my discretion as Township Highway Commissioner I directed that the three new culverts installed during June of 2010 replacing the one old culvert underneath 3200 East Road were all of a larger size than the old culvert.

9. All Arrowsmith Township Road District improvements made to 3200 East Road, Arrowsmith Township by and at my direction during the time I have served as Arrowsmith Township Highway Commissioner were the result of policy decisions I made in my official capacity balancing competing interests and making a judgment call as to what solution would best serve each of the competing interests in my jurisdiction.

10. All Arrowsmith Township Road District improvements made to 3200 East Road, Arrowsmith Township by and at my direction during the time I have served as Arrowsmith Township Highway Commissioner were the result of discretionary acts unique to the office of Township Highway Commissioner undertaken by me."

¶ 14    Plaintiffs filed no counteraffidavit.

¶ 15                              II. ANALYSIS

¶ 16                         A. Our Standard of Review

¶ 17    On appeal from the dismissal of a complaint as barred by affirmative matter (735 ILCS 5/2-619(a)(9) (West 2010)), our standard of review is *de novo*. *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, ¶ 5. That means we perform the same analysis a trial court should perform, without giving any deference to the trial court's ruling. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 18    We accept as true all well-pleaded facts in the complaint. *Hellweg*, 2011 IL App (1st) 103604, ¶ 5. Conclusions do not qualify as "well-pleaded facts." *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 17. If the amended complaint contains conclusions–either legal conclusions or conclusory factual allegations–we disregard them unless they are earned by specific allegations of fact. *Id.*

¶ 19    Whenever it would be reasonably defensible to draw an inference in the plaintiff's favor from the well-pleaded facts, we draw that inference. *Id.* In other words, we look at the complaint in its best possible light. *Hellweg*, 2011 IL App (1st) 103604, ¶ 5.

¶ 20    In scrutinizing the complaint, we take for granted that it states a cause of action, because a motion for dismissal pursuant to section 2-619(a) (735 ILCS 5/2-619(a) (West 2010)) admits the legal sufficiency of the complaint (*Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 578-79 (2006)), while asserting defects or defenses outside the complaint that defeat the claim (*Solaia*, 221 Ill. 2d at 578-79). Instead of refuting any

allegation of material fact in the complaint, affirmative matter negates the claim as a whole. *Provenzale v. Forister*, 318 Ill. App. 3d 869, 878 (2001).

¶ 21 Unless the affirmative matter is already apparent on the face of the complaint, the defendant must support the affirmative matter with an affidavit or with some other material that could be used to support a motion for summary judgment. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). The plaintiff then must come forward with a counteraffidavit refuting the evidentiary facts in the defendant's affidavit, or else those facts will be deemed admitted. *Id.* Given the affidavits and pleadings, we decide whether there is a genuine issue of material fact that should have precluded the dismissal of the complaint, or, alternatively, if there is no genuine issue of material fact, we decide whether the dismissal was legally justified. *Id.* at 116-17.

¶ 22 B. Plaintiffs' Contention That Their Actions Do Not Sound in Tort

¶ 23 Plaintiffs quote the appellate court's reasoning in *Raintree Homes, Inc. v. Village of Long Grove*, 335 Ill. App. 3d 317, 320 (2002), that "the Tort Immunity Act *** applies only to actions in tort." That case, however, went to the supreme court, and the supreme court was unconvinced by the appellate court's reasoning that the Tort Immunity Act applied only to tort actions. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) ("we do not adopt or approve of the appellate court's reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort"). In any event, plaintiffs argue that their actions, which allege violations of the "Drainage Law," are not actions in tort and that, hence, section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2010)) affords defendant no immunity to their actions.

¶ 24 Assuming, for the sake of argument, that the Tort Immunity Act applies only to actions in tort, plaintiffs' actions do sound in tort. Damaging someone's land by unreasonably altering the flow of surface water is a nuisance (*Meyers v. Kissner*, 149 Ill. 2d 1, 10-11 (1992)), and a nuisance is a tort (*In re Chicago Flood Litigation*, 176 Ill. 2d 179, 207 (1997)). In fact, the Restatement (Second) of Torts has a section devoted to this type of tort, section 833, entitled "Interference With the Flow of Surface Waters." Restatement (Second) of Torts § 833 (1979). Comment b of section 833 describes the same tortious interference with water drainage that plaintiffs allege in their amended complaint:

"When one person drains or cultivates his land, grades it or builds roads, structures or embankments upon it, he usually interferes with the flow of surface waters upon or across it; and this interference often causes harm to a neighbor in the use and enjoyment of his land. That harm may arise from the backing up of water on the neighbor's land or from an increase in the flow of the water or from a change in its direction or velocity. *** Whatever the particular situation may be, the same general rules apply in determining liability for the invasion of the neighbor's interest in the use and enjoyment of his land as apply when an invasion results through vibrations, noise, smoke or the pollution of waters. In all these cases the type of interest invaded is the same, the only difference being in the manner in which the invasion is caused and in the type of conduct that causes it." Restatement (Second) of Torts § 833 cmt. b (1979).

As comment b confirms, plaintiffs' actions are classic actions in tort. Therefore, the Tort Immunity Act applies to their actions.

¶ 25    C. Plaintiffs' Attempt To Relabel, as Restitution, the Damages
That They Explicitly Seek in Their Amended Complaint

¶ 26    Section 2-101 of the Tort Immunity Act (745 ILCS 10/2-101 (West 2010)) provides: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." Plaintiffs argue that the relief they seek in their amended complaint is not damages. They argue that, instead, they "are merely seeking a remedy comparable in nature to restitution." They cite *Raintree*, a case in which seeking a monetary remedy against a village did not trigger the Tort Immunity Act (*Raintree*, 209 Ill. 2d at 258).

¶ 27    Plaintiffs' actions, however, are significantly different from the action in *Raintree*, both in legal theory and in the remedy sought. In *Raintree*, a village ordinance required the plaintiffs to pay "impact fees" in return for each building permit the village issued to them. *Id.* at 252. The plaintiffs sought a declaratory judgment that the village lacked statutory and constitutional authority to enact such an ordinance, and they also sought a refund of the impact fees they had paid to the village. *Id.* at 253. The village moved for the dismissal of the amended complaint, pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2000)), because the plaintiffs had not brought their action within the one-year period of limitation in section 8-101 of the Tort Immunity Act (745 ILCS 10/8-101 (West 2000)). *Raintree*, 209 Ill. 2d at 253. The trial court granted the motion, but the appellate court reversed the trial court's judgment. *Id.* Although the supreme court did "not adopt or approve of the appellate court's reasoning that the Tort Immunity Act categorically exclude[d] actions that [did] not sound in tort" (*id.* at 261), the supreme court affirmed the appellate court's judgment, for a different reason: the supreme court held that the "[p]laintiffs' claim [was] an action which [sought] 'relief other than damages,' as set forth in the first sentence of section 2-101, and [was], therefore, excluded from the [Tort Immunity] Act." *Id.* at 256 (quoting 745 ILCS 10/2-101 (West 2002)). The first sentence of section 2-101 provided: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." 745 ILCS 10/2-101 (West 2002). Because the plaintiffs in *Raintree* had brought a declaratory judgment action seeking restitution of the impact fees they had paid the village, not damages, section 2-101 made the Tort Immunity Act inapplicable to their claim. *Raintree*, 209 Ill. 2d at 256.

¶ 28    In the present case, by contrast, plaintiffs do not bring an action for declaratory judgment; they bring a tort action–and as its name announces, the Tort Immunity Act applies to tort actions. Also, as plaintiffs repeatedly say in their amended complaint, they seek an award of damages. They do not seek restitution. As the supreme court explained in *Raintree*, restitution is measured by the defendant's unjust gain, whereas damages are measured by the plaintiff's loss. *Raintree*, 209 Ill. 2d at 257. In paragraphs 9 and 11 of both counts of the amended complaint, plaintiffs purport to measure their monetary remedy by the property damage they allegedly have suffered. Hence, they seek damages, not restitution.

¶ 29        D. The Presupposition of the Tort Immunity Act That a Public Employee
                    Possibly Has Committed a Civil Wrong, a Tort

¶ 30        In *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 375 (2003), the supreme court reiterated its holding from previous cases, that, in order for a public employee to have immunity under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 1994)), the alleged acts or omissions by the public employee had to be "both a determination of policy and an exercise of discretion." (Internal quotation marks omitted.) Plaintiffs argue: "A municipality is not authorized by [*Van Meter*] to create a policy which violates the law. Secondly, discretion pertains to how an action is performed, when there is more than one way to do it. However, the available alternatives must be lawful. Electing between a lawful way and a lawless way does not immunize a local unit of government."

¶ 31        Plaintiffs seem to be arguing that the Tort Immunity Act immunizes public employees only insomuch as they make lawful choices. The trouble with that argument is that it makes the Tort Immunity Act pointless. A tort is, by definition, contrary to law–it is a civil wrong, a breach of a legal duty, for which the law affords a remedy (Black's Law Dictionary 1496 (7th ed. 1999))–and by immunizing a public employee from tort liability, the Tort Immunity Act necessarily immunizes the public employee from liability for choosing the "unlawful way," provided that the public employee's conduct is not willful and wanton (745 ILCS 10/3-108 (West 2010)). In other words, the Tort Immunity Act presupposes that a public employee possibly has committed a civil wrong, a tort. That is why it is called the "Tort Immunity Act."

¶ 32        Section 2-201 (745 ILCS 10/2-201 (West 2010)), for example, specifically immunizes an abuse of discretion. The statute says: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion *even though abused*." (Emphasis added.) *Id.* A decision is an abuse of discretion only if no reasonable person would agree with it. *Shaw v. St. John's Hospital*, 2012 IL App (5th) 110088, ¶ 18. It follows that, if a public employee has abused his or her discretion, the public employee necessarily has breached the reasonable-person standard of tort law (see *Advincula v. United Blood Services*, 176 Ill. 2d 1, 22 (1996)).


¶ 33        E. The Theory That Defendant Is Guilty of Willful and Wanton Conduct
                            and Therefore Not Immune

¶ 34        Plaintiffs argue that, under section 3-108 of the Tort Immunity Act (745 ILCS 10/3-108 (West 2010)), their "allegations of willful and wanton conduct would have *** created an exception to immunity." "The alleged willful or wanton conduct," however, "must be manifested in the facts alleged; conclusory allegations or mere characterizations of alleged acts as willful are insufficient." *Snyder v. Olmstead*, 261 Ill. App. 3d 986, 991 (1994). See also *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 10 ("When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not merely by labeling the conduct willful and

wanton." (Internal quotation marks omitted.)). Thus, we do not accept as true the allegation, in paragraph 7 of counts I and II, that, "[w]hen making the changes [in the drainage patterns], the Defendant was willful and wanton because he knew changes would violate the common law and statutory obligation to maintain natural drainage patterns." The allegation of willfulness and wantonness, together with the allegation of what defendant "knew," is conclusory, and we disregard conclusory assertions in the amended complaint. See *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26; *Hanks*, 2011 IL App (1st) 101088, ¶ 17; *Snyder*, 261 Ill. App. 3d at 991. Just because the Association predicted to defendant that installing the culverts under 3200 East Road would damage the Association's land, it does not reasonably follow that defendant *knew* such an outcome would result; nor does it reasonably follow that he was willful and wanton by disbelieving the Association's prediction.

¶ 35    More to the point, defendant could have responsibly decided that eliminating a threat to public safety was worth the additional burden that might be placed on the Association's land. Plaintiffs assert in their amended complaint that defendant had a "common law and statutory obligation to maintain natural drainage patterns." On the contrary, that is not the law. Instead, case law has adopted a standard of "reasonableness of use" (*Templeton v. Huss*, 57 Ill. 2d 134, 141 (1974)): essentially, a nuisance standard, under which the benefits to the higher property, from the altered drainage pattern, are weighed against the harm to the lower property (*Swigert v. Gillespie*, 2012 IL App (4th) 120043, ¶ 32; *Dovin v. Winfield Township*, 164 Ill. App. 3d 326, 335-36 (1987), *overruled on other grounds by Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179 (1989)).

¶ 36    It was not willful and wanton conduct on defendant's part to decide that the safety of drivers outweighed the risk of disrupting the drainage patterns on the Association's land. According to defendant's unrebutted affidavit, water flowing over 3200 East Road had been washing away the shoulders of the road, endangering drivers, and to keep the water from washing away the shoulders, defendant installed additional and larger culverts under the road, so that the water would flow under the road instead of over it. "When supporting affidavits have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts stated therein are deemed admitted." (Internal quotation marks omitted.) *Thurman*, 2011 IL App (4th) 101024, ¶ 21. To be guilty of willful and wanton conduct, defendant had to pursue "a course of action which show[ed] *** an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2010). Given the pleadings and defendant's uncontradicted affidavit, one could not fairly and accurately say that defendant showed an *utter indifference* to, or *conscious disregard* of, the safety of the Association's land. Instead of irresponsibly ignoring the threat to the Association's land, defendant took it into account and decided that the protection of life and limb was a weightier consideration. This choice was not willful and wanton.

¶ 37    In sum, in our *de novo* review, we find no genuine issue of material fact that would have precluded the dismissal of the amended complaint, and we conclude that the dismissal was legally justified because, under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2010)), defendant has immunity to plaintiffs' tort actions.

¶ 38                                   III. CONCLUSION

¶ 39        For the foregoing reasons, we affirm the trial court's judgment.

¶ 40        Affirmed.