# Illinois Official Reports

## Appellate Court

---

**Andrews v. Marriott International, Inc., 2016 IL App (1st) 122731**

---

| | |
|---|---|
| Appellate Court Caption | ERIN ANDREWS, Plaintiff-Appellant, v. MARRIOTT INTERNATIONAL, INC., a Delaware Corporation; WEST END HOTEL PARTNERS, LLC, d/b/a Nashville Marriott at Vanderbilt University, a Delaware Limited Liability Company; WINDSOR CAPITAL GROUP, INC., a Colorado Corporation; RADISSON HOTELS INTERNATIONAL, INC., a Delaware Corporation; ASREL, INC., d/b/a Radisson Hotel Milwaukee Airport, a Wisconsin Corporation; THE OHIO STATE UNIVERSITY, d/b/a The Blackwell Inn; and MICHAEL DAVID BARRETT, an Individual, Defendants (Preferred Hotel Group, Inc., d/b/a Summit Hotels and Resorts, a Delaware Corporation, Defendant-Appellee). |
| District & No. | First District, Second Division<br>Docket No. 1-12-2731 |
| Rule 23 order filed | August 23, 2016 |
| Rule 23 order withdrawn | September 1, 2016 |
| Opinion filed | September 6, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-8186; the Hon. Kathy Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Power Rogers & Smith, P.C., of Chicago (Sean M. Houlihan, of counsel), and Greene Broillet & Wheeler, of Santa Monica, California (Bruce A. Broillet, Scott H. Carr, Alan Van Gelder, and Tobin M. Lanzetta, of counsel), for appellant.

Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Scott L. Howie, of counsel), for appellee.

Panel

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2008, while plaintiff, Erin Andrews, was a guest of The Blackwell Inn (Blackwell), she was secretly recorded on video in the privacy of her hotel room by another guest, Michael David Barrett. Plaintiff filed this action sounding in negligence and invasion of privacy against defendant, Preferred Hotel Group (Preferred),[1] the service provider of Blackwell's online reservation system, for, among other things, Blackwell's disclosure of the details of her hotel stay to Barrett. Plaintiff's theory of liability is that Preferred was either (1) engaged in a joint venture operation of the hotel or (2) voluntarily assumed a duty to protect plaintiff's privacy. Preferred moved to dismiss the complaint pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(9) (West 2010)) arguing that it did not owe a duty to plaintiff and was not engaged in a joint venture to operate Blackwell. After two years of discovery, the circuit court granted Preferred's section 2-619(a)(9) motion to dismiss. Plaintiff appeals from the dismissal, which we affirm for the following reasons.

¶ 2                                   BACKGROUND

¶ 3    Relevant to plaintiff's claims against Preferred, the following facts are taken from the complaint. On February 4, 2008, Andrews was a guest at Blackwell located in Columbus, Ohio. Blackwell is owned and operated by Ohio State University (OSU). In the days leading up to her hotel stay, Illinois resident Michael David Barrett contacted Blackwell by phone to confirm that Andrews was staying at the hotel and asked to be assigned the room next door to her. Blackwell granted Barrett's requests. After checking into the hotel on February 4, Barrett retrofitted the peephole on Andrew's hotel room door. In doing so, he was able to record video of her activities in the room, including changing and dressing. Eventually, he posted these videos on the Internet.

---

[1] Plaintiff's complaint also contained allegations against other defendants for similar events that occurred at other hotels on other dates. Those counts were all dismissed on procedural grounds.

- 2 -

¶ 4        Defendant Preferred is a corporation with its principal place of business in Chicago, Illinois. It provides marketing, sales and reservation services to its network of hotels for a fee. Blackwell is a member of Preferred's network and utilizes Preferred's marketing and Internet reservation services. Andrews alleged that Preferred is liable for Blackwell's staff disclosing her hotel stay and room number to Barrett and assigning him the room next door to her, without her prior consent thereby allowing him to engage in his tortious activities.

¶ 5        Plaintiff's theory of liability is that Preferred "owned, operated, controlled, maintained, managed, supervised, handled reservations for and/or were otherwise responsible for The Blackwell Inn" and that Blackwell "was the agent and/or joint venture of Preferred *** acting within the course, scope and authority of said agency and/or venture." Preferred "had a duty to exercise reasonable and ordinary care and action in and about the ownership, management, maintenance, supervision, control and operation of Blackwell and its reservation system, and each of their employees, agents, servants and independent contractors, all to the benefit of the guests." Preferred was "negligent in the selection, hiring, training and supervision of each and every other defendant as an agent and/or joint venturer." Plaintiff also alleged that Preferred and OSU were associated with the purpose of "carrying out a specific enterprise for profit." Preferred and OSU had a community of interest and proprietary interest in Blackwell; Preferred had a right to govern the hotel's policies and share in the hotel's profits and losses. Based on this theory, plaintiff alleged claims against Preferred for negligent infliction of emotional distress and invasion of privacy.

¶ 6        In response to the complaint, Preferred filed a hybrid motion to dismiss under section 2-619.1 of the Code, which permits a party to combine a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2010). Preferred argued that the claims must be dismissed pursuant to section 2-615 of the Code because plaintiff failed to allege sufficient facts to support the conclusory allegation that Preferred owed plaintiff a legal duty. Preferred also argued dismissal of the claims pursuant to section 2-619(a)(9) of the Code because Preferred did not owe a duty to plaintiff for the acts of Blackwell's staff, there was no principal-agent or joint venture relationship between Preferred and Blackwell and Preferred had no knowledge that Andrews was a guest at the hotel.

¶ 7        Attached to Preferred's motion to dismiss was a written agreement governing the relationship between Preferred and OSU. The preamble to the agreement provides that Preferred "is a service organization designed to provide marketing, sales and reservation services to member hotels." In return for these services, Blackwell pays membership and booking fees to Preferred, it agrees to "conform strictly" with Preferred's "Quality Assurance Program" (Standards of Excellence) and allows Preferred "to evaluate the quality of the property and related services rendered at the hotel *** from time to time *** and bear the cost of these evaluations." The agreement explains that Preferred will invoice Blackwell every 30 days for any amounts owed and if any amounts remain unpaid after 60 days, Preferred has the right to suspend all services and charge 1.5% per month on the unpaid sums.

¶ 8        The affidavit of Xen Riggs, the associate vice president of administration and planning at OSU, was also attached to Preferred's motion to dismiss. In this affidavit, Mr. Riggs attested that Blackwell is owned by OSU, its operations are governed by OSU's board of trustees and it is managed by OSU's office of administration and planning. Blackwell runs a deficit, but if it were to make a profit, any profit would solely benefit OSU. Preferred does not have any

employees at Blackwell, does not handle any phone calls to Blackwell, and does not have any involvement in the operations or management of Blackwell.

¶ 9    Also supporting Preferred's motion was the affidavit of Ken Mastrandrea, Preferred's executive managing director of corporate operations. Mr. Mastrandrea averred that Preferred provides online hotel reservation services to Blackwell via Preferred's Internet booking engine (iBook). Blackwell maintains a link to iBook on its website. Preferred's involvement with reservations made with Blackwell are limited to those made through the iBook platform. A guest inputs the reservation information into iBook, which then electronically sends the reservation request to Blackwell's computer system, and if accepted, the guest receives electronic confirmation including the room rate and type. Preferred's involvement with reservations at Blackwell is limited to providing the platform for the electronic transmittal of reservation confirmation to and from the hotel and its guests via the Internet. If room reservations are made other than through iBook, Preferred does not have access to any guest identity or information. Preferred never has had access to Blackwell's guest list or any guest's room number. Preferred has no access to any information regarding guests who booked their rooms directly through the hotel or through any other means. Because Preferred does not have access to guest identities or guest room numbers, if someone called their office requesting this information, Preferred could not give the caller any such information.

¶ 10    Mr. Mastrandrea also attested that Preferred has no ownership interest in the hotel and does not share in its profits or losses. Preferred charges Blackwell a fee for membership in the network and for its booking services. Preferred has no involvement in the operation or management of its member hotels, including Blackwell's policies and procedures regarding safety and/or privacy. There are no "Preferred" employees at Blackwell or any of its member hotels and it does not handle phone calls placed to the member hotels. According to Preferred's records, Andrews's reservation was not made through Preferred's system, and therefore, it had no knowledge that Andrews was a guest at the hotel. Barrett made a reservation through iBook on Blackwell's website for which Preferred was paid a service fee. However, Preferred's actions in respect to Barrett's reservation were limited to the electronic reservation request automatically generated through the hotel's computer system and a confirmation notice sent to Barrett over the Internet.

¶ 11    At plaintiff's request, the circuit court permitted discovery regarding the matters raised in the motion to dismiss. This discovery was conducted over a two-year period and included the deposition of Mr. Mastrandrea.

¶ 12    At his deposition, Mastrandrea testified that Preferred's "Standards of Excellence" are comprised of "1600 items of guest service standards that we provide to the hotel to manage their service to guests." Member hotels are required to comply with the standards. Once a year, third-party independent inspectors perform a check to determine the level of compliance. The inspectors prepare a report that informs the hotels of their aggregate compliance score and ways to improve. A follow-up inspection is required only if a hotel falls below 70% compliance. The compliance reports are reviewed by one of Preferred's regional managers. A Preferred executive only reviews an inspection report if the compliance score is lower than 70%. Preferred relies on the hotels to make the inspector's suggested corrections. If corrections are not successfully made, Preferred might request an improvement plan from the hotel and follow up as needed. If a hotel still fails to remediate, then Preferred reviews the results and possibly extends the improvement plan or takes further action. Preferred has close to 800

member hotels. In its history Preferred has terminated its relationship with only three or four hotels. All of Blackwell's inspections have exceeded a 70% compliance rate, and therefore, no executive at Preferred has been referred to review Blackwell's reports. There are no standards or inspection criteria that address hotel staff informing a third party about other guests staying at the hotel or granting a guest's request to be placed in the hotel room next to another guest without prior consent.

¶ 13 After completion of discovery, plaintiff filed a written response to the motion to dismiss. Plaintiff argued that Preferred's motion should be denied because it was a "disguised motion for summary judgment," Preferred's " 'evidence' " merely refutes plaintiff's ultimate facts, which does not constitute affirmative matter, and a question of fact exists as to whether Preferred owed a duty of care to plaintiff. Plaintiff asserted that Preferred owed her a duty of care because either it was in a joint venture with OSU in the operation of Blackwell or Preferred voluntarily assumed a duty of care. Plaintiff contended that because Preferred requires its member hotels to comply with the "Standards of Excellence" that includes matters of privacy (communicating a guest's room number in writing rather than verbally and requiring identification before issuing a duplicate key), Preferred voluntarily assumed a duty to protect the privacy of guests at its member hotels. Plaintiff also argued that Preferred exercised control over the safety measures and policies of Blackwell and these actions created a joint venture, giving rise to Preferred's liability for the actions of Blackwell's staff.

¶ 14 After the hearing, the circuit court granted Preferred's motion to dismiss pursuant to section 2-619(a)(9) of the Code. The circuit court found that the parties' discovery established that "[t]he relationship between Preferred and Blackwell was limited to services provided for electronic transmittal of requests to Blackwell in transmission of confirmation numbers back to guests." The agreement between Preferred and OSU/Blackwell was the "limitation of the undertaking," and the discovery established that Preferred does not have access to room numbers or other information concerning guests. Preferred is simply "a contract service provider; they charge for their services and they get paid for their services." Although plaintiff alleged that Preferred and OSU were engaged in a joint venture, plaintiff was unable to provide the court with any evidence to dispute Preferred and OSU's "contractual relationship." Preferred and OSU's written agreement for services defined their duties "which do *** not cover the conduct alleged in the complaint," and therefore, Preferred cannot be held liable to plaintiff for the acts of Blackwell's staff. In view of this ruling, the circuit court found Preferred's section 2-615 motion to dismiss moot and also ordered that there was "not [*sic*] just reason for delay of appeal or enforcement of this order." Thereafter, plaintiff timely filed this appeal.

¶ 15                                                       ANALYSIS

¶ 16 First, plaintiff argues that Preferred's motion was improperly designated as a motion to dismiss and, therefore, should have been denied outright. Plaintiff contends that the motion was a "disguised" summary judgment motion that did not involve an "affirmative matter" but merely refuted plaintiff's well-pled allegations. In response, defendant disagrees and argues that if its arguments for dismissal were more appropriate for summary judgment rather than section 2-619 dismissal, reversal is only required where the nonmovant was prejudiced by the misdesignation.

¶ 17 "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation" (*Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003)) and is "similar to a summary judgment motion because [it] '*** essentially amounts to a summary judgment procedure.' " *Peterson v. Randhava*, 313 Ill. App. 3d 1, 9 (2000) (quoting *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 724 (1997)). These types of motions are similar because in order to rule on them we must determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004). Misdesignation of a motion for summary judgment as a motion to dismiss is not fatal to the movant's right to prevail where the nonmoving party did not suffer any prejudice or unfair surprise due to the error. *Peterson*, 313 Ill. App. 3d at 9.

¶ 18 Here, the affirmative matter presented in Preferred's motion is that it did not owe a duty of care to plaintiff because it did not have a principal-agent or joint venture relationship with the hotel and did not otherwise voluntarily undertake a duty of care. To support its motion, Preferred attached to its motion a copy of the written agreement between Preferred and OSU/Blackwell and the Riggs and Mastrandrea affidavits. Over the course of two years, the circuit court permitted the parties to conduct written and oral discovery on the matters raised in Preferred's motion. Therefore, in this instance, where a defined issue was raised in Preferred's motion and plaintiff was granted time to conduct lengthy discovery on Preferred's assertions, we find that, whether viewed as a motion to dismiss or a motion for summary judgment, plaintiff was not prejudiced in the designation of the motion to dismiss as a motion under section 2-619(a)(9) of the Code.

¶ 19 The circuit court dismissed plaintiff's complaint pursuant to section 2-619(a)(9) of the Code, which permits the involuntary dismissal of a claim where the claim asserted is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). Affirmative matter is "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994). "Unless the affirmative matter is already apparent on the face of the complaint, the defendant must support the affirmative matter with an affidavit or with some other material that could be used to support a motion for summary judgment." *Pleasant Hill Cemetery Ass'n v. Morefield*, 2013 IL App (4th) 120645, ¶ 21. Once a defendant has presented adequate affidavits or other evidence of support, " 'the defendant [has] satisfie[d] the initial burden of going forward on the motion' " and the burden then shifts to the plaintiff who is required to establish that the affirmative matter is either unfounded or involves an issue of material fact. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 37 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). A plaintiff may overcome this burden by presenting "affidavits or other proof." 735 ILCS 5/2-619(c) (West 2010). However, a plaintiff cannot rely on the allegations from his own complaint to refute such evidence. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1101-02 (2009). In addition, if a plaintiff does not come forward with a counteraffidavit refuting the evidentiary facts in the defendant's affidavit or other evidence, those facts may be admitted and the motion may be granted on the basis that plaintiff "failed to carry the shifted burden of going forward." *Hodge*, 156 Ill. 2d at 116; *Pleasant Hill Cemetery Ass'n*, 2013 IL App (4th) 120645, ¶ 21.

¶ 20    The affirmative matter raised by Preferred in its motion to dismiss, and supported with affidavits and deposition testimony, is that it did not owe a duty of care to plaintiff and it was not in a joint venture with Blackwell, and therefore, it could not be held liable for Blackwell's disclosure of details regarding plaintiff's hotel stay to Barrett or the assignment of Barrett to the room next to plaintiff without her prior consent.

¶ 21    Plaintiff argues that Preferred can be held liable for the events that occurred at Blackwell because either (1) Preferred was a member of a joint venture with Blackwell to operate the hotel or (2) Preferred voluntarily assumed a duty of care to plaintiff. She contends that these theories of liability involve questions of fact that should have precluded dismissal of her claims.

¶ 22                                   *Joint Venture*

¶ 23    A joint venture is an association of two or more persons to carry out a single enterprise for profit. *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 843 (1992). Members of a joint venture are vicariously liable for the joint venturers' negligent acts committed during the course of the venture. *Hiatt v. Western Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 72. Ordinarily whether a joint venture exists is a question of fact; however, where there is no evidence to support the existence of a joint venture, its existence can be decided as a matter of law. *Anderson v. Boy Scouts of America, Inc.*, 226 Ill. App. 3d 440, 444 (1992); *Oliveira-Brooks v. Re/Max International, Inc.*, 372 Ill. App. 3d 127, 134 (2007). "The existence of a joint venture is shown by allegations demonstrating (1) a community of interest in the purpose of the joint association, (2) a right of each member to direct and govern the policy and conduct of the other members, and (3) a right to joint control and management of the property used in the enterprise." *Romanek v. Connelly*, 324 Ill. App. 3d 393, 405 (2001) (citing *Behr v. Club Med, Inc.*, 190 Ill. App. 3d 396, 409 (1989)). A formal agreement is not essential to establish a joint venture (*Hiatt*, 2014 IL App (2d) 140178, ¶ 73), and its existence "may be inferred from the facts and circumstances demonstrating that the parties in fact entered into a joint venture" (*O'Brien*, 227 Ill. App. 3d at 843). However, the most significant element to consider in determining whether a joint venture exists is the intent of the parties. *Thompson v. Hiter*, 356 Ill. App. 3d 574, 582 (2005).

¶ 24    Plaintiff claims Preferred is liable for Blackwell's actions because Preferred and OSU were engaged in a joint venture to operate Blackwell. Plaintiff argues Preferred and OSU/Blackwell's course of conduct created a joint venture, specifically, Preferred's control over the operations and policies of Blackwell and the sharing of reservation fees. We disagree and find that, on the record before us, Preferred and OSU were nothing more than two separate entities contracting with one another for a particular service from which each would derive their own individual profit.

¶ 25    The record before us includes a written agreement between Preferred and OSU that governs their relationship regarding limited services for Blackwell. Under the agreement, Preferred provides OSU/Blackwell with marketing, sales, and reservation services in exchange for a fee. The agreement does not mention the creation of a joint venture or enterprise, and Preferred and OSU's rights and obligations under the agreement are different from one another. In fact, we found nothing in the agreement to infer that Preferred and OSU intended to operate Blackwell as a joint venture enterprise. Furthermore, as we discuss below, plaintiff has not provided any "affidavits or other proof" to refute Preferred's affidavits and testimony

supporting the affirmative matter that Preferred and OSU/Blackwell did nothing to create a joint venture either through the written agreement or through their conduct.

¶ 26                                                *Common Interest*

¶ 27        As to the first element necessary to establish a joint venture, plaintiff contends that a community of interest is evidenced by Blackwell becoming a member of Preferred's hotel network and Blackwell having access to Preferred's iBook reservation system, which evidences a joint venture relationship. We are not persuaded. Nothing in the parties' agreement or conduct, as developed from the discovery in the record, supports the conclusion that they shared a community of interest in association with Blackwell. Certainly, both parties expected to benefit from their contractual association, but this does not indicate the intention to create a joint venture to operate Blackwell. See *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 212 (2003). In fact, the agreement indicates that Preferred and Blackwell had two different interests in doing business with one another. Preferred would allow Blackwell the use of its reservation system so that Internet users could book a hotel stay, and Preferred would be paid a fee for reserving a room using its iBook service. This fee would be earned regardless of whether the reservation proved profitable to Blackwell. In return, Blackwell would sell a room and generate revenue from that and other services. There is no evidence Preferred would financially benefit beyond the fee earned through iBook. Simply put, two distinct entities doing business together does not equate to the establishment of a joint venture. See *id*.

¶ 28        *Right to Govern Blackwell's Policy and Joint Control Over the Enterprise*

¶ 29        Next, as to the second and third joint venture elements, plaintiff suggests that Preferred's contractual requirement that its member hotels comply with its "Standards of Excellence" equates to Preferred's right to direct the conduct and policy of Blackwell and exert control over its operation. Contractual agreements that require one party to perform or forbid performance of a particular act does not equate to control of management for the purpose of imposing a joint venture. *Kaporovskiy*, 338 Ill. App. 3d at 212 (limiting one contracting party from selling competing food products did not equate to "control over property" or policy); *Barton v. Evanston Hospital*, 159 Ill. App. 3d 970, 974-75 (1987) ("mutuality of control" absent in a contractual relationship where doctor has discretion in patient treatment even though hospital supplied doctor with necessary equipment and personnel).

¶ 30        Here, the written agreement does not give Preferred any degree of joint control over the operation of Blackwell. Although Preferred requires that its member hotels follow the "Standards of Excellence," the evidence before us establishes that member hotels, including Blackwell, are not required to be in complete compliance with Preferred's standards and the hotels may interpret the standards and make adjustments or improvements at their discretion. Preferred merely provides a list of standards that it wants its member hotels to meet at a 70% or higher level, but Preferred does not actually engage in any management or control over the hotel, its operations, or its staff. According to Mr. Mastrandrea's affidavit and deposition testimony, which has not been refuted by plaintiff through "affidavits or other proof," Preferred does not have any employees at Blackwell, Preferred does not and never had access to Blackwell's guest list or the assignment of hotel room numbers. Therefore, we find that Preferred and Blackwell did not have "mutuality of control" over the hotel's property and policies necessary to establish that element of a joint venture.

¶ 31    Although plaintiff also contends that there was a sharing in the profits and the losses of Blackwell, there is no evidence in the record to support this conclusion. Preferred's receiving a fee for its marketing and reservation services is not akin to having a common interest and sharing profits in the operation of Blackwell. *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1066 (2005) (cooperation between two entities consisting of one handling of the payroll and human resources function of another company for a fee is insufficient as a matter of law to show a joint venture existed). There is nothing in the record to suggest that Preferred and Blackwell were anything other than two separate entities doing business with one another for their separate financial benefit. More than a mere interest in another entity's success must be asserted to allege a joint venture. Two businesses entering into a service agreement "seeking to mutually profit from it" is not enough to turn a business relationship into a joint venture sufficient to impose vicarious liability on a contracting party. *Kaporovskiy*, 338 Ill. App. 3d at 212. While Preferred may have hoped for Blackwell's continued success so that it could earn more fees through its booking and reservation services, this is not enough to support the legal conclusion that these entities were engaged in a joint venture. Finally, after two years of discovery, a further indication that no joint venture existed is the evidence that Preferred would collect booking fees even if Blackwell operated at a financial loss.

¶ 32    In the absence of any one of the required elements, a joint venture cannot be found to exist in fact or in law. *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 76. It is plaintiff's burden to show that she can support her claim that Preferred engaged in a joint venture to operate Blackwell. *Petry v. Chicago Title & Trust Co.*, 51 Ill. App. 3d 1053, 1057 (1977). Beyond mere conclusory allegations, plaintiff has failed to support her legal conclusion or establish that a question of fact exists as to the existence of a joint venture. Therefore, we affirm the ruling of the circuit court that Preferred did not have a duty to plaintiff on this basis.

¶ 33                              *Voluntary Undertaking*

¶ 34    Next, plaintiff argues that whether Preferred voluntarily assumed a duty to protect her privacy as a guest of Blackwell is a question of fact that precludes dismissal under section 2-619(a)(9) of the Code. We disagree and find that no genuine issue of material fact exists as to whether Preferred voluntarily undertook a duty to protect the privacy of Blackwell's guests.

¶ 35    Negligence cannot be established unless the defendant owed the plaintiff a duty of care. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388 (1998). Whether a duty of care exists is a question of law. *Id.*; *Chelkova v. Southland Corp.*, 331 Ill. App. 3d 716, 722 (2002). Illinois courts have adopted section 324A of the Restatement (Second) of Torts (1965), which provides that one may be liable to a third person for the negligent performance of a voluntary undertaking. The relevant sections of section 324A of the Restatement provide as follows:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>>
>> (b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A (1965).

See *Bell v. Hutsell*, 2011 IL 110724, ¶¶ 12-14; *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204 (1979). Under this theory, the scope of an assumed duty " 'is limited to the extent of the undertaking' " and must be narrowly construed. *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 123 (quoting *Bell*, 2011 IL 110724, ¶ 12); *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124, 131 (1993); *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). To determine the extent of the voluntary undertaking we consider, on a case by case basis, both the specific act undertaken and a reasonable assessment of its underlying purpose. *Bourgonje v. Machev*, 362 Ill. App. 3d 984 (2005).

¶ 36    Plaintiff argues that Preferred's voluntary undertaking was evidenced by several factors: (1) Preferred's requirement that its member hotels comply with its "Standards of Excellence," which included two standards involving guest privacy; (2) Preferred's hiring of independent inspectors to review compliance with these standards; and (3) the appearance of Preferred's signage in the hotel informing hotel guests that the hotel is a member in Preferred's network. Plaintiff contends that, because Preferred has two privacy-related standards (that the hotel communicate the room rate and room number in writing at check-in and proof of identity must be shown before a duplicate key is issued), the absence of a standard relating to disclosing guest identity and room number or placing a guest next to another on request is a breach of voluntary undertaking to protect a guest's privacy. Further, plaintiff argues that Preferred negligently failed to prevent Blackwell from disclosing the identity of Andrews, the dates of her stay, her room number, and in granting Barrett's request to be assigned a room next door to Andrews. Plaintiff asserts that even though Preferred does not have a standard specifically prohibiting these acts, the failure to employ such standards was a breach of the privacy standards it did embrace.

¶ 37    We find that Preferred's actions do not rise to the level of a voluntary undertaking under the Restatement. The extent of Preferred's undertaking is reflected in the written contract between Preferred and Blackwell: Preferred allowed Blackwell to join Preferred's member network and agreed to let Blackwell use Preferred's online booking platform for a fee. As explained by Mr. Mastrandrea, although Preferred provides its hotels with a list of guest standards to follow, Preferred has no employees at its member hotels and exercises no control over the policies, procedures, and general operation of these hotels. Plaintiff fails to identify anything in the record to support its assertion that Preferred assumed any duty to protect the privacy of Blackwell's guests under its marketing and reservation agreement with Blackwell other than the two standards related to written room rates and room assignment and issuance of duplicate keys. Plaintiff does not provide any support for her assertion that Preferred "render[ed] services to another which *** [it] should recognize as necessary for the protection of a third person." From this record, it is clear that the extent of Preferred's undertaking to Blackwell was to provide a reservation platform for booking rooms over the Internet and issuing the two aforementioned standards. There is no evidence that supports the conclusion that, by providing this service and publishing these standards, Preferred voluntarily undertook an additional duty to protect the privacy of other guests of Blackwell, of which it had no knowledge or connection whatsoever, by undertaking duties to instruct Blackwell's staff against giving guest information or room numbers or assigning guests in the manner that is alleged in this complaint.

¶ 38    There is no evidence to conclude that Preferred could have voluntarily undertaken a duty to protect plaintiff's privacy where Preferred only contracted with OSU/Blackwell for marketing and reservation services and did not have contact with or put forth any service for plaintiff's benefit. Mastrandrea testified that plaintiff did not book her hotel room through Preferred's iBook system. Other than guests who used the iBook reservation system, Preferred has no contact with any other Blackwell guest and does not have access to Blackwell records to learn the identity, duration or room assignment for anyone staying at the hotel. Defendant supported its motion to dismiss with affidavits and other evidence to show that this affirmative matter defeated plaintiff's claims. Plaintiff was afforded ample opportunity to discover evidence that would refute defendant's affirmative matter or demonstrate that a question of material fact exists. The allegations contained in plaintiff's complaint are insufficient to refute the affirmative matter properly raised and produced by defendant. *Hollingshead*, 396 Ill. App. 3d at 1101-02.

¶ 39    To the extent that Preferred's quality standards that hotels put room rates and numbers in writing at check-in and that called for identification prior to issuing duplicate room keys may be relevant to the issue of a voluntary undertaking, we find this is insufficient to expand the undertaking to include all other conceivable security measures. Voluntary undertakings are to be strictly construed and even if we considered these two standards to be security related they do not extend the duty of care to an act that was not voluntarily undertaken. The complained of acts did not involve oral identification of a room number at check-in or the giving of a duplicate key to a room without producing identification. Preferred did not undertake a privacy standard for its member hotels that it should not identify guests or their rooms over the phone or assign adjoining rooms upon request and without the other guests' consent. Plaintiff has not demonstrated a plausible argument to extend the theory of voluntary undertaking to conduct that is the equivalent to a failure to perform.

¶ 40    We conclude, based on this record, there is no evidence to support a finding that a voluntary undertaking was made by Preferred to protect the privacy of plaintiff. We find that the circuit court properly found that Preferred did not voluntarily undertake a duty of care to protect plaintiff's privacy and therefore properly dismissed the complaint. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155 (2009) (dismissal of a complaint sounding in negligence against a husband's mental health care providers was upheld where the providers could not have voluntarily undertaken a duty to protect the wife from his violent acts because the providers did not render a service to the wife or for her protection); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204 (1979) (summary judgment for landlord upheld in wrongful death action of a social guest of the tenant on landlord's premises because landlord did not voluntarily undertake a duty to protect the guest where landlord did not provide "protective services" itself but rather hired a third party to provides "protective services" on the premises); *cf. Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69 (1964) (defendant insurance company owed a duty to protect plaintiff construction workers from injury where it voluntarily advertised, planned, directed, and undertook safety inspections and safety engineering services to ensure safety on construction project and filed reports with the insurance agency and insured relied on these inspections).

¶ 41                                    CONCLUSION

¶ 42            For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43            Affirmed.